51 CCPA
**BENDIX AVIATION CORPORATION,**
Appellant,

v.

**ARDOR MANUFACTURING COMPANY,**
Inc., Appellee.

**Patent Appeal No. 7134.**

United States Court of Customs
and Patent Appeals.

May 21, 1964.

Emory C. Naylor, Washington, D. C.,
for appellant.

William T. Sevald, Royal Oak, Mich.,
for appellee.

Before WORLEY, Chief Judge, and
RICH, MARTIN, SMITH and AL-
MOND, Judges.

RICH, Judge.

This appeal is from the decision of
the Patent Office Trademark Trial and
Appeal Board dismissing an opposition
to the registration of "BENDIT" for
"hand tools for bending or shaping alu-
minum wire into hooks," application
serial No. 59,591, filed September 26,
1958.

Opposer is Bendix Aviation Corpo-
ration [1] which, under the trademark
"Bendix," manufactures and sells, inter
alia, hand tools for servicing and main-
taining equipment such as electrical and
ignition systems. The tools include
clinching pliers, crimping tools, wrench-
es and the like all of which are suitable
for use to bend and shape metal.

Appellee's "BENDIT" tool, character-
ized by the board as "designed * * *
for the ever-popular 'do-it-yourselfer',"
is simply a short metal rod the ends of
which are grooved and pronged to per-
mit hand-shaping of aluminum wire
pieces into hooks for pegboards.

The opposition is based on opposer's
registration of "Bendix," Reg.No. 662,-
208, for various testing and indicating
equipment including "tools and devices
* * * for testing and analyzing elec-
trical systems and components thereof
* * *."

Appellee relies on its application as
filed, taking no testimony below and fil-
ing no brief in this court. Opposer took
testimony, introduced as evidence vari-
ous exhibits illustrating its tools as ad-
vertised and sold, and submitted a deal-
er's promotional circular describing ap-
pellee's tool.

The board considered the sole issue to
be "determination * * * of likeli-
hood of confusion" and said:

"There is no question but that as
opposer alleges the goods of both
parties may be considered as hand
tools and may broadly be construed
to perform a similar function. As
the record shows, however, op-
poser's hand tools are designed for
use in servicing, maintaining, and
installing specialized equipment
manufactured by opposer such as
diesel fuel injection pumps and noz-
zle holders, jet ignition systems

1. Opposer's corporate name was changed to Bendix Corporation on May 25, 1960.

testers, ignition systems used on reciprocating type engines, and other highly technical equipment which would ordinarily be sold through distributors of this type of equipment for use by technically trained individuals. Applicant's hand tool, however, is a simple gadget which is apparently designed like many other similar products for the ever-popular 'do-it-yourselfer' and for distribution through the normal retail outlets for such type products.

"Considering therefore the *nature of and the differences between* the hand tools of the parties and the *highly suggestive nature* of the mark 'BENDIT', it is unlikely that purchasers familiar with 'BENDIX' technical equipment and tools will assume that applicant's product originates with or is in some way associated with opposer."

On reconsideration the board added:

"Upon a review of the record in this proceeding, the Board remains of the opinion that the sale of the products of the parties under the *surname* 'BENDIX' and the *suggestive term* 'BENDIT', respectively, is not likely to cause purchasers to attribute a common origin thereto." [Emphasis ours.]

We find no clear error in the board's unanimous decision and for reasons set out below appellant has not convinced us there is any.

Appellant's principal argument appears to be that in determining likelihood of confusion the board erred in characterizing opposer's tools as "specialized" vis-à-vis the simple wire-bending tool of appellee; that in fact one of opposer's tools, a physical exhibit in evidence, "discloses more points of similarity than any points of dissimilarity." We note from the testimony and exhibits that opposer's tool in question is a "spring tension adjusting tool" and, although it is in some respects similar in appearance to appellee's tool, it does not appear to be intended for use as a wire or metal bending tool. With respect to appellant's other tools, we agree with the board that their use results from acquisition "through distributors of this type of equipment for use by technically trained individuals" as compared with appellee's tool which is a "simple gadget" for distribution through "normal retail outlets."

Appellant further argues that the marks consist "of a six-lettered word, differing only in the last letters, in the one case ending in the letter (t) while in the other case, the letter is an (x)," and that not only are the marks similar in appearance but they are also "similar in sound in the spoken word." Appellant also points out that some of their tools are used to service "reciprocating type engines" in "lawn mowers, outboard motors and stationary engines" which service may be performed not only by technically trained personnel but by persons characterized by the board as "do-it-yourselfers," who use the "BENDIT" tool.

Notwithstanding appellant's arguments, we agree with the board that "Considering * * * the nature of and the differences between the hand tools of the parties and the highly suggestive nature of the mark 'BENDIT', it is unlikely that purchasers familiar with 'BENDIX' * * * tools will assume that applicant's product originates with or is in some way associated with opposer."

"BENDIX" is a very well known trademark, originally a proper name, and does not, we think, suggest bending. "BENDIT," on the other hand, as used is highly suggestive of a bending tool and has an entirely different connotation, not suggestive of connection with Bendix products. See In re General Electric Co., 304 F.2d 688, 49 CCPA 1186 ("Vulcan" v. "Vulkene"), and Lever Bros. Co. v. Producers Chemical Service, 283 F.2d 879, 48 CCPA 744 ("Lux" v. "Shux").

The decision of the board is affirmed.

Affirmed.

WORLEY, C. J., sat but did not participate in decision.