**NALPAC, LTD., a Michigan corporation, Plaintiff-Appellant,**

v.

**CORNING GLASS WORKS, a New York corporation, Defendant-Appellee.**

No. 85–1001.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 13, 1986.

Decided Feb. 27, 1986.

Gary A. Krochman (argued), Southfield, Mich., Arnold S. Weintraub, Troy, Mich., for plaintiff-appellant.

Richard A. Gaffin, Miller, Canfield, Paddock & Stone, Grand Rapids, Mich., Rick A. Pacynski, Gregory L. Curtner, Detroit, Mich., Alfred L. Michaelsen (argued), Corning, N.Y., for defendant-appellee.

Before MERRITT and WELLFORD, Circuit Judges, and EDWARDS, Senior Circuit Judge.

GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge.

Corning Glass was charged by Nalpac with infringement of its trademark "Common Scents." Nalpac used this for a line of incense sticks they were marketing and a federal trademark was granted to them on February 14, 1978. In 1981, an employee of Corning Glass conceived a product consisting of a glass mason jar containing a scented candle. Asserting that it had no knowledge of the Nalpac registry, Corning decided to use the words "Common Scents." Prior to doing so, Corning conducted a trademark search and searched 11 of the 52 classes of products:

Class 2——Receptacles

Class 6 —Chemicals and Chemical Compositions

Class 15—Oils and Greases

Class 30—Crockery, Earthenware and Porcelain

Class 33—Glassware

Class 34—Heating, Lighting and Ventilating

Class 1 —Chemicals

Class 4 —Lubricants and Fuels

Class 11—Environmental Control Apparatus

Class 20—Furniture and Articles Not Otherwise Classified

Class 21—Housewares and Glass

Corning found no conflicting trademark under these searches and in September 1981 started selling their jar candles under the Common Scents name. On February 9, 1981, Corning filed to register the name as a trademark. In July 1982, the U.S. Patent Office determined that their use of that name on their product would be likely to cause confusion among consumers with Nalpac's previously granted and registered name "Common Scents."

On February 23, 1983, Nalpac's counsel wrote Corning protesting the use of the name and demanding disclosure of Corning's profits. Corning thereupon wrote back disputing that there was any possibility of confusion. On June 14, 1983, Nalpac filed suit alleging trademark infringement. The District Court denied the preliminary injunction. In October, 1983, Corning received a final rejection of its application to register Common Scents. In December of that same year, Corning contacted Nalpac and offered to enter into a consent agreement against Corning. Nalpac refused. In early 1984, Corning stopped shipping the product for distribution and sold out its remaining inventory at its three Corning

retail outlets. All of the candles were sold by August 1984.

In August, 1984, Corning moved for summary judgment, offering to accept entry of an injunction restraining it from using the Common Scents name again. The District Court entered an injunction against Corning and denied Nalpac's request for money damages. It also held that Nalpac had not suffered any damages.

Before us Nalpac concedes that it is not prepared to prove any damages in the sense of lost profits. Nalpac is claiming unjust enrichment and seeks to ascertain the extent of Corning's profits which at oral argument, were claimed to be in excess of $1,000,000. Nalpac's basic reliance is 15 U.S.C. § 1072 which reads:

> Registration of a mark on the principal register provided by this chapter or under the Act of March 3, 1881, or the Act of February 20, 1905, shall be constructive notice of the registrant's claim of ownership thereof.

But the critical issue in our instant case is whether or not Corning was guilty of bad faith in its total course of conduct.

Turning to Corning's position, it relies upon 15 U.S.C. § 1117 which reads:

> **§ 1117. Recovery for violation of rights; profits, damages and costs; attorney fees**
>
> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and *subject to the principles of equity,* to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circum-stances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

Good faith has been recognized as a defense in damage actions under § 1117:

> Registered trademarks, like patents, can be and often are innocently infringed. Registration of the mark "ARMCO" on the principal register is constructive notice of plaintiff's claim of ownership thereof under 15 U.S.C. § 1072. While infringing intent, or the lack thereof, is definitely a factor to be considered in determining whether the money damages awarded for trademark infringement should be punitive, compensatory, or merely nominal, intent is not a factor to be considered in determining the basic issue of liability for trademark infringement by defendants. Both parties will have ample opportunity to introduce evidence as to infringing intent, or lack thereof, in subsequent proceedings to determine the amount of money damages to be awarded to plaintiff, if any.

*Armco Steel Corp. v. International Armament Corp.,* 249 F.Supp. 954, 959 (D.D. C.1966).

In the District Court, the District Judge described the facts as follows:

> Plaintiff contends that it has adopted and used a trademark, Common Scents, since 1976 to market incense that it manufactures. It owned the trademark registration of the mark and contends that Defendant, Corning Glass, has infringed the mark in connection with the sale of scented candles. The product sold by the Defendant is a Mason jar containing a

scented candle bearing the mark Common Scents.

He also had found at that same preliminary hearing as follows:

[T]here was very little likelihood of confusion as one product was incense and the other was a scented candle in a jar. The other, as I say, the first being incense in either cone or stick form, and I found that the marketing channels, after hearing testimony, were totally different. The Plaintiff's product is sold for about a dollar in novelty shops and the Defendant's candle jar was sold for $4.99 a piece primarily in hardware stores.

In addition, the District Judge made the following two additional findings of fact. He then concluded:

Defendant now has agreed to cease using the mark, has not distributed the jars for sometime and it seems to me that equity, subject to equity, the equitable principles here weigh in favor of granting the permanent injunction but denying monetary relief.

Our review of this record leads us to affirm the District Court. This is not the usual trademark infringement case. Here the infringer, Corning, had much stronger name recognition, marketing channels and advertising capability than did Nalpac. In *Carl Zeiss Stiftung v. Veb Carl Zeiss Jena*, 433 F.2d 686, 707 (2nd Cir.1970), *cert. denied*, 403 U.S. 905, 91 S.Ct. 2205, 29 L.Ed.2d 680 (1971), the Second Circuit held that for accounting, plaintiff must show "not only that the infringer infringed, but that he did so with the deliberate intent to cause confusion, mistake or to deceive purchasers; in other words, to purposely palm off the infringer's goods as those of the infringed." In *Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 123 (9th Cir.), *cert. denied*, 391 U.S. 966, 88 S.Ct. 2037, 20 L.Ed.2d 879 (1968), the Ninth Circuit held accounting is proper only where defendant is "attempting to gain the value of an established name of another."

Further, refusal by the United States Patent Office to register a mark is not of itself evidence of bad faith.

The fact that one believes he has a right to adopt a mark already in use because in his view no conflict exists since the products are separate and distinct cannot, by itself, stamp his conduct as in bad faith, even after the Patent Office has refused the mark registration. Any such doctrine would preempt a mark exclusively in favor of a senior user for all related products. In *Triumph Hosiery Mills, Inc. v. Triumph International Corp.*, the Court stated:

An "innocent" or a bona fide junior user ... is one, we think, whose use is not attributable to intent to obtain a free ride on the reputation of the owner of the trade-mark.... From the bare fact that the Patent Office had refused the defendants' application for registration ... it did not follow that the defendants could not have honestly believed that on a weighing of all the relative and variable pertinent factors a court of competent jurisdiction would not permit them to use the trademark.... [sic] Surely, error of an alleged infringer of a trade-mark, or indeed of a patent, in forecasting the decision of the ultimate arbiter, is not a species of bad faith which constitutes independent and substantive proof of infringement.[41]

[41] 308 F.2d 196, 199 (2d Cir.1962). *See Avon Shoe Co. v. David Crystal, Inc.*, 279 F.2d 607, 611 n. 6 (2d Cir.), *cert. denied*, 364 U.S. 909, 81 S.Ct. 271, 5 L.Ed.2d 224 (1960).

*Mushroom Makers, Inc. v. R.G. Barry Corp.*, 441 F.Supp. 1220, 1230 (S.D.N.Y. 1977), *aff'd*, 580 F.2d 44 (2nd Cir.1978), *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979).

Finally, an accounting, the proper remedy when bad faith is shown, is inappropriate where "there has been no showing of fraud or palming off." *Champion Spark Plug v. Sanders*, 331 U.S. 125, 131 (1947). No such proofs are contained in this record. The record shows that Corning did not seek to exploit the term Common Scents after it

had knowledge of Nalpac's trademark. Nalpac concedes that it cannot establish any damages.

We agree with the District Judge that there is simply no proof that Corning was guilty of bad faith in selling off its inventory.

The judgment of the District Court is affirmed.